# EXHIBIT 1

Filed
D.C. Superior Court
06/05/2020 09:25AM
Clerk of the Court

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **DISTRICT OF COLUMBIA** <br> a municipal corporation <br> 441 4th Street, N.W. <br> Washington, D.C. 20001, <br><br>        **PLAINTIFF,** <br><br>   v. <br><br> **ELEVATE CREDIT, INC.** <br> 1209 Orange Street <br> Wilmington, Delaware 19801 <br><br>        **DEFENDANT**. | Case No.:  **2020 CA 002697 B** <br> Judge: <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATIONS OF THE
## CONSUMER PROTECTION PROCEDURES ACT

The District of Columbia, by the Office of the Attorney General ("the District"), brings

this action against Elevate Credit, Inc. ("Elevate") to address violations of the District of

Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq*. In

support of its claims, the District states as follows:

### INTRODUCTION

1.     Elevate is on online lender that operates through several websites, including

www.risecredit.com, www.elastic.com, and www.elevate.com, to provide predatory, high-

interest, short-term loans to consumers that it describes as individuals "with little to no savings,

urgent credit needs and limited options."

2.     Its loans contain interest rates of up to 149% for its Rise loans and 251% for its

Elastic loans, both well in excess of the 24% and 6% caps in the District's usury statutes.

3.      On its website, Elevate stresses that it is "focused on developing solutions that can help customers end the cycle of debt and build a brighter tomorrow."

4.      In Elevate's 2019 10-K filing with the Securities and Exchange Commission ("10-K"), it describes its business model as "provid[ing] convenient, competitively priced financial solutions to our customers, who are not well-served by either banks or legacy non-prime lenders, by using our advanced technology platform and proprietary risk analytics."

5.      Yet rather than lifting struggling consumers out of the cycle of debt, Elevate further entrenches them by deceptively offering predatory, high-cost loans. Elevate entices vulnerable consumers with the prospect of fast cash only to saddle them with loans with usurious interest rates.

6.      As the District and the Nation enter a period of economic uncertainty borne by the unprecedented health crisis of Covid-19, it is more important than ever to safeguard District consumers from illegal, predatory online loans such as Elevate's. The District institutes this proceeding to permanently enjoin Elevate from engaging in activities that violate the CPPA; to obtain restitution for District consumers and civil penalties as permitted by statute; and to recover the District's fees and costs.

## JURISDICTION AND PARTIES

7.      This Court has jurisdiction over the subject matter of this case pursuant to D.C. Code §§ 11-921 and 28-3909.

8.      This Court has personal jurisdiction over Defendant Elevate pursuant to D.C. Code § 13-423(a). Elevate has offered, provided, serviced, and advertised loans to District residents.

9.      Plaintiff District of Columbia ("District"), a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States. The District is represented by and through its chief legal officer, the Attorney General for the District of Columbia. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code § 1-301.81(a)(1). The Attorney General is specifically authorized to enforce the District's consumer protection laws, including the CPPA, pursuant to D.C. Code § 28-3909.

10.     Defendant Elevate is a Delaware corporation that has offered, provided, serviced, and advertised loans to District residents in conjunction with FinWise Bank ("FinWise"), a Utah-chartered bank, for its Rise brand, and Republic Bank & Trust Company ("Republic"), a Kentucky-chartered bank, for its Elastic brand.

## FACTUAL ALLEGATIONS

### I.      Elevate Provided Illegal Loans to District Consumers.

11.     Usury is as old as biblical times. To prevent preying upon society's most vulnerable, most states have enacted limits on the legal interest rates for lending. The District's usury cap for most loans in which the interest rate is expressed in the contract, is 24%. D.C. Code § 28–3301(a). The District's usury cap for loans without an express interest rate is 6%. D.C. Code § 28–3302(a).

12.     Additionally, entities that offer loans in the District at any interest rate are required to obtain a money lending license. 16 DCMR § 201.1. Elevate has never possessed a money lending license in the District of Columbia.

13.     Elevate offered and advertised loans through two different brands to District residents that far exceeded both the 6% and 24% District usury caps: Rise and Elastic.

14.     Until April 2020, Elevate marketed Rise and Elastic loans to District consumers at interest rates up to 251%.

15.     Elevate has provided at least 871 Rise loans and at least 1680 Elastic loans to District consumers.

16.     District consumers have paid or been charged millions of dollars in unlawful interest on the loans provided by Elevate.

**II.     Elevate Markets and Owns the Rise and Elastic Products.**

17.     Elevate provides the marketing for its Rise and Elastic products.

18.     Elevate has advertised these online products through direct mail, E-mails, and via banner ads on the Internet that were either accessible to or directed at District residents.

19.     In 2019, it sent more than 62 million pre-selected credit offers to consumers nationwide.  That year, Elevate incurred $51,283,000 in direct marketing costs, and $7,381,000 in operating expenses for selling and marketing its products, which include the Rise and Elastic loans.

20.     Elevate also provides the analytics, software, and underwriting models to FinWise and Republic for the provision of the Rise and Elastic loans. It holds the intellectual property rights to its proprietary analytics, predictive underwriting models, and software systems.

21.     Elevate has either registered trademarks or has pending applications in the United States for the marks Rise and Elastic.

22.     Elevate has the predominant economic interest in the loans it provides to District consumers via FinWise and Republic.

### III.    Elevate Deceptively Marketed and Provided Its Rise Loans to District Consumers with Illegal Interest Rates between 99-149%.

23.    Starting no later than the second half of 2018 until at least April 2020, Elevate has deceptively marketed and offered its Rise brand loans to District consumers at interest rates between 99% and 149%, well in excess of the District's usury cap.

### A.    Elevate Deceptively Marketed Rise Loans in the District.

24.    Elevate's Rise brand is an installment loan that offers "fast approval for loans between $500 and $5,000." Elevate generates all of the marketing materials for Rise loans.

25.    Elevate prepares product offerings and associated marketing materials; develops and places internet, print media, radio and television advertising; designs and develops websites; and delivers all notices and disclosures to consumers.

26.    Elevate alone is responsible for all costs and expenses associated with advertising and developing promotional materials for Rise loans.

27.    In a segment of its website labeled "The truth about Rise,"[1] Elevate advertises Rise as superior to payday loans or overdraft fees, stating " . . . RISE is often a better, more responsible alternative to more expensive options like overdraft fees, payday loans, late fees and utility reconnection fees." Elevate's "The truth about Rise" website also includes the below chart that purportedly shows Rise as far less expensive than other credit options.

---

[1] https://www.risecredit.com/why-rise/ (screenshot on 5/21/20).



<u>"The truth about Rise"</u>

28.     In small-print footnotes, Elevate explains that it calculates the overdraft protection costs based upon a consumer borrowing $24 for three days and paying an overdraft fee of $34, which they calculate as a "loan" at 17,000% Annual Percentage Rate ("APR").

29.     However, in terms of actual cost to the consumer, overdraft fees pale next to the finance charges on a Rise loan. For example, Elevate states in its 10-K that the average loan balance for its products was $1711 in 2019. An average consumer, therefore, would need to incur more than 51 overdraft fees to exceed the finance charges for an average Rise loan.

30.     Similarly, Elevate's comparison to utility reconnection fees does not withstand scrutiny. For instance, Pepco reconnection fees in the District are $35. A consumer would have to pay more than 50 reconnection fees in 17 months to exceed the average finance charges on a Rise loan.

31.     Payday loans are illegal in the District, and thus Elevate's comparison of its products to such illegal loans is deceptive and misleading.

32.     Furthermore, Elevate does not advertise the APR for its Rise brand to consumers in its direct mail offers. Instead, the direct mail offers simply promise fast access to a pre-approved amount. The mailings indicate that the APR varies depending on a borrower's credit report, but Elevate does not provide any range for the potential APR.

33.     A consumer must complete an application for a Rise loan in order to obtain this critical information.

34.     Elevate's 10-K reflects that the APR for Rise loans is between 99% and 149% depending upon the borrower's "credit, employment and loan repayment history as well as a number of other factors."

35.     In its advertisements to potential Rise customers in the District, Elevate does not disclose that its product's interest rate far exceeds the legal usury caps in the District.

**B.     Elevate is the True Lender of its Rise Loans.**

36.     Lenders typically fund a loan, reap the profits of good loans, and take the risk of bad loans. Elevate does all three for the Rise loan.

37.     First, although Elevate, in essence rents FinWise to provide the loan, it is Elevate that directs and controls the funding of the loan.

38.     For example, Elevate funds Rise loans through its captive credit financing relationship with Victory Park Management, LLC ("VPC"). Per Elevate's 10-K, if VPC could no longer provide debt financing for Elevate, Elevate would have to secure other sources of debt financing or potentially reduce loan originations.

39.     Second, Elevate reaps most of the profits from the loan.

40.     In 2019, Elevate's revenue from the Rise brand totaled approximately $390,354,000.

41.     At all relevant times to this Complaint, Elevate EF SPV ("EF SPV") a Cayman Islands special purpose vehicle that operates for the financial benefit of Elevate, has purchased a 96% interest in the receivables for the loans, including the principal and interest due on the loans.

The 96% interest makes EF SPV the legal and equitable owner of the receivables for the loans. These receivables generate income for Elevate, which is the primary beneficiary of EF SPV.

42.     Indeed, Elevate's financial statements specifically include "revenue, losses and loans receivable related to the 96% of Rise installment loans originated by FinWise Bank and sold to EF SPV."

43.     Elevate controls the core economic performance of EF SPV and must absorb its losses.

44.     Third, Elevate takes the risk of bad loans.

45.     For example, Elevate provides credit protection to EF SPV against Rise loan losses. This credit protection places the risk of losses on Elevate.

46.     Additionally, FinWise's interests are protected in its agreement with EF SPV by a requirement that EF SPV maintain cash collateral in a FinWise account in specified amounts to secure its obligations to purchase the loans.

47.     Elevate, through ones of its subsidiaries, also acts as the servicer for the Rise loans. Its duties as a servicer include reconciling the accounts, posting payments and other credits to the accounts, and providing periodic billing statements.

IV.     **Elevate Deceptively Marketed and Offered Its Elastic Brand Loans to District Consumers with Illegal Interest Rates of 129% to 251%.**

48.     Beginning in January 2014 and continuing until at least April 2020, Elevate deceptively marketed and offered its Elastic brand loan to District consumers at interest rates between 129% and 251%, well in excess of the District's usury caps.

A.      **Elevate Deceptively Marketed Elastic Loans in the District.**

49.     Elastic is a line of credit in amounts between $500 and $4,500. As with Rise, Elevate has engaged in a rigorous advertising campaign to attract District residents to obtain an Elastic loan.

50.     Elevate identifies potential customers via its "websites, call centers, direct mail or other marketing channels" that it alone operates.

51.     Elevate generates the marketing materials for the Elastic loans.

52.     It prepares product offerings and associated marketing materials; develops and places internet, print media, radio and television advertising; designs and develops websites; and delivers all notices and disclosures to consumers.

53.     Elevate alone is responsible for all costs and expenses associated with advertising and developing promotional materials.

54.     Its advertisements disclose that it charges Elastic borrowers an initial advance fee of $5 or $10 for each $100 advanced, as well as a fixed charge of 5% or 10% of the open balance in each payment period. Elevate charges the higher rates to consumers who repay monthly instead of bi-weekly or semi-monthly. Like a payday loan, Elevate schedules repayments to coincide with the borrower's payday. Consumers have up to twenty payments to repay their loans.

55.     In its direct mail solicitations Elevate pushes Elastic as a way to "avoid expensive overdraft fees or bounced checks."

56.     Yet, in its 10-K, it explains that "if an Elastic customer makes a $2,500 draw on the customer's line of credit and this draw required bi-weekly minimum payments of 5%

(equivalent to 20 bi-weekly payments), and if all minimum payments are made, the draw would earn finance charges of $1,148."

57.     Most banks charge overdraft fees of approximately $35. For Elevate's 10-K example of a $2,500 loan, that consumer would need to incur more than 32 overdraft fees to exceed the finance charges of $1,148 for such a loan.

58.     Elevate does not advertise or disclose the effective APR of its Elastic brand loans to consumers.

59.     On its website and in similar language in its agreement with consumers, Elevate claims that Elastic "does not have an interest rate like other traditional credit products. Rather, you pay a cash advance fee plus 5 or 10% for every cash advance you request depending on your billing cycle."

60.     Elevate deducts the cash advance fee from the amount that it lends so that a consumer borrowing $500 with a 5% cash advance fee, would actually receive $475.

61.     Elevate also charges a 5% or 10% fee for each billing cycle in which the consumer has a balance. Elevate describes the recurring fee as a "Carried Balance Fee."

62.     Elevate sets the cash advance fees and Carried Balance Fees at 5% or 10%, based upon whether the consumer repays every two weeks, or monthly.

63.     Its direct mail offers describe this as "easy-to-understand pricing."

64.     Although Elevate does not disclose the effective APR for Elastic to consumers, it does calculate it for itself and its investors.

65.     Elevate's 10-K states that "[f]or the year ended December 31, 2018, [Elastic's] effective APR was 129%" . . . . and that for the year ended December 31, 2013, the effective APR for Elastic was 251%.

66.     A reasonable consumer would not understand that a loan with a disclosed 5-10% fee for each cash advance and repayment, has an effective APR of 129%.

67.     In its advertisement to potential Elastic customers in the District, Elevate does not disclose that the interest rate on its product far exceeds the usury cap in the District.

**B.      Elevate is the True Lender of its Elastic Loans.**

68.     As with the Rise loans, Elevate reaps the profits and takes the risk of Elastic loans.

69.     Elevate partners with Republic to provide Elastic loans. Elevate, in essence rents Republic to originate the loans that it ultimately controls and profits from through Elevate SPV ("ESPV").

70.      For example, in its 10-K, Elevate explains that it needs a bank in order to provide access to the Automated Clearing House ("ACH") system to deposit the loans into consumers' accounts and to withdraw the repayments.

71.     Emphasizing that this is Elevate's product, Elevate explains when discussing regulatory concerns that " . . . if these banks cease to provide ACH processing services or are not allowed to do so, we would have to materially alter, or possibly discontinue, some or all of our business if alternative ACH processors or other payment mechanisms are not available."

72.     In 2019, Elevate's revenue from the Elastic brand totaled approximately $248,518,000.

73.     Since 2015, ESPV, a Cayman Islands special purpose vehicle that operates for the financial benefit of Elevate, has purchased a 90% interest in the receivables for the loans, including the principal and interest due on the loans. The 90% interests that ESPV purchases

make it the legal and equitable owner of the receivables for the loans. These receivables generate income for Elevate.

74.     Elevate controls the core economic performance of ESPV and must absorb its losses.

75.     Indeed, Elevate's financial statements include "revenue, losses and loans receivable related to the 90% of Elastic loans originated by Republic and sold to ESPV."

76.     Elevate also takes the risk of bad Elastic loans.

77.     For example, Elevate provides credit protection to ESPV against Elastic loan losses. In other words, Elevate holds the risk for loan losses.

78.     Additionally, Republic's interests are protected in its agreement with ESPV by a requirement that ESPV maintain cash collateral in a Republic account in specified amounts to secure its obligations to purchase the loans.

79.     Elevate, through ones of its subsidiaries, acts as the servicer for the Elastic loans. Its duties as a servicer include reconciling the accounts, posting payments and other credits to the accounts, and providing periodic billing statements.

## COUNT ONE

**Misrepresentations and Omissions
in Violation of the Consumer Protection Procedures Act**

80.     The District re-alleges and incorporates by reference paragraphs 1 through 79, as if fully set forth herein. The CPPA is a remedial statute that should be broadly construed. It establishes a right to truthful information from merchants about consumer goods and services that are or would be purchased, leased or received in the District of Columbia.

81.     Consumers obtain loans from Defendant for personal, household or family purposes and, therefore, these loans are consumer goods and services.

82.     Defendant, in the ordinary course of business, offers to sell or supply consumer goods and services and is therefore a merchant.

83.     In addition, Defendant is a merchant because it is connected with the supply-side of a consumer transaction.

84.     Merchants who violate the CPPA may be subject to restitution, damages, civil penalties, temporary or permanent injunctions, the costs of the action, and reasonable attorneys' fees. D.C. Code § 28-3909.

85.     The CPPA prohibits any person from engaging in unfair and deceptive trade practices, including by:

    a.  "represent[ing] that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have," D.C. Code §28-3904(b);

    b.  "misrepresent[ing] as to a material fact which has a tendency to mislead," D.C. Code §28-3904(e); and

    c.  "fail[ing] to state a material fact if such failure tends to mislead," D.C. Code §28-3904(f); and

    d.  "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead," D.C Code §28-3904(f-1).

86.     Defendant's representations, express or implied, that it is permitted to offer loans in the District of Columbia, when, in fact, Defendant does not possess the required money lender license allowing it to lawfully make loans to District residents, are representations that Defendant

has an approval, certification or status that it does not have and are unlawful trade practices in violation of the CPPA, D.C. Code § 28-3904(b).

87.     Defendant's representations, express or implied, including its representations that:

    a.   its offer of loans is legal in the District of Columbia, and

    b.   its loans are less expensive than incurring overdraft fees, utility reconnection fees, or taking out a payday loan,

are misrepresentations of material facts that have the tendency to mislead consumers and are unlawful trade practices in violation of the CPPA, D.C. Code § 28-3904(e).

88.     Defendant's omissions, including its failure to disclose or to adequately disclose:

    a.   that its Rise and Elastic loans contain an APR in excess of the District's usury limits,

    a.   the expected APRs or ranges of APRs for its Elastic brand, and

    b.   the APRs or range of APRs for its Rise brand,

are omissions of material facts that mislead consumers and are unlawful trade practices in violation of the CPPA, D.C. Code § 28-3904(f), or, alternatively, constitute ambiguities as to material facts that have the tendency to mislead consumers and are unlawful trade practices in violation of the CPPA, D.C. Code § 28-3904(f-1).

## COUNT TWO

### Unfair and Unconscionable Practices
### in Violation of the Consumer Protection Procedures Act

89.     The District re-alleges and incorporates by reference paragraphs 1 through 88, as if fully set forth herein.

90.     The CPPA prohibits any person from engaging in unfair trade practices. The CPPA also prohibits any person from engaging in "unconscionable" practices where the seller

takes advantage of the "inability of the consumer reasonably to protect his interests." D.C. Code § 28-3904(r)(5).

91.     Defendant has engaged in unfair and unconscionable practices affecting District consumers, in violation of D.C. Code § 28-3904 and § 28-3904(r), by knowingly offering, providing, servicing, and marketing predatory, high-cost loans to consumers in the District of Columbia, causing substantial harm to such consumers.

92.     Defendant's conduct, including inducing consumers with false and deceptive statements to enter into predatory, high-cost loans and failing to disclose (or adequately disclose) to consumers the true costs and interest rates associated with its loans, constitute unfair trade practices that violate D.C. Code § 28-3904, and unlawful trade practices that violate D.C. Code § 28-3904(r).

## COUNT THREE

### Violations of District Usury Laws in Violation of the Consumer Protection Procedures Act

93.     The District re-alleges and incorporates by reference paragraphs 1 through 92, as if fully set forth herein.

94.     The CPPA prohibits any person from engaging in unfair and deceptive trade practices, including by violating the District's usury laws. D.C. Code § 28-3904(ff).

95.     The District's usury limit is 24% if the loan is provided by a licensed money lender and the interest rate is expressed in the contract, and 6% if the loan is provided by a licensed money lender and the interest rate is not expressed in the contract. D.C. Code § 28–3301(a), D.C. Code § 28-3308(a), D.C. Code § 28–3302(a).

96.     Elevate has offered Rise loans in the District at APRs between 99% and 149%.

97.     Elevate has offered Elastic loans in the District at APRs that have varied between 129% and 251%.

98.     Elevate is subject to the District's usury laws and it has offered Rise and Elastic loans that violate the District's usury law.

99.     Elevate's offer of Rise and Elastic loans in violation of the District's usury laws are unlawful trade practices that violate D.C. Code § 28-3904(ff).

## COUNT FOUR

### Violations of the DCMR as Violations of the Consumer Protection Procedures Act

100.    The District re-alleges and incorporates by reference paragraphs 1 through 99, as if fully set forth herein.

101.    The CPPA prohibits any person from engaging in unfair and deceptive trade practices, including by violating "any provision of title 16 of the District of Columbia Municipal Regulations." D.C. Code § 28-3904(dd).

102.    Elevate has engaged in the business of loaning money in the District without obtaining a license as a money lender as required under 16 DCMR § 201.1 and 16 DCMR § 200.4.

103.    Elevate's violations of Title 16 of the District of Columbia Municipals Regulations are unlawful trade practices that violate D.C. Code § 28-3904(dd).

## PRAYER FOR RELIEF

WHEREFORE, the District of Columbia respectfully requests this Court enter a judgment in its favor and grant relief against Defendants as follows:

a)      Permanently enjoin Defendant's violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28–3901, *et seq.*;

b)      Order Defendant to pay restitution and damages pursuant to D.C. Code §§ 28–3909(a) and (b); and § 26-905;

c)      Order that the loans marketed, offered, and sold by Defendants were unconscionable at the time they were made, or to have been induced by unconscionable conduct, and are therefore unenforceable and void, pursuant to D.C. Code §§ 28-3909 and 28-3812(g)(1).

d)      Order that the loans marketed, offered, and sold by Defendants in violation of 16 DCMR § 201.1 are unenforceable and void.

e)      Order the payment of civil penalties as permitted by statute pursuant to D.C. Code § 28–3909(b);

f)      Award the District the costs of this action and reasonable attorney's fees pursuant to § 28–3909(b); and

g)      Grant such further relief as the Court deems just and proper.

### Jury Demand

The District of Columbia demands a trial by jury by the maximum number of jurors permitted by law.

Dated: June 5, 2020

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

KATHLEEN KONOPKA
Deputy Attorney General
Public Advocacy Division

_____s/_____
BENJAMIN WISEMAN (#1005442)
Director, Office of Consumer Protection

17

_____s/_____
WENDY J. WEINBERG (# 445460)
Senior Assistant Attorney General
Office of Consumer Protection
Office of the Attorney General
441 Fourth Street, N.W., Suite 600 South
Washington, D.C. 20001
(202) 724-1342
Wendy.Weinberg@dc.gov

DAVID BRUNFELD (#1672059)
Assistant Attorney General

Dated: June 5, 2020

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
                                              Plaintiff
                          vs.
                                                            Case Number    **2020 CA 002697 B**
Elevate Credit, Inc.
_____
                                              Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Wendy J. Weinberg
_____
Name of Plaintiff's Attorney

DC Office of the Attorney General                          By _____
Address
441 4th Street, NW, 6th Floor South, WDC 20001                          _____
                                                                              Deputy Clerk
202—724—1342                                               Date    **06/05/2020**
Telephone
如需翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오.         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                              Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

_____
Dirección

_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 연락하십시오     ፣ትርጉም ከፈለጉ በዚህ ቁጥር ይደውሉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                                      Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

District of Columbia _____

Case Number: **2020 CA 002697 B** _____

vs

Date: _____

Elevate Credit, Inc. _____

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Wendy Weinberg | Relationship to Lawsuit |
| Firm Name:<br>DC Office of the Attorney General | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>202-724-1342                    445460 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury        ☐ 6 Person Jury        ☒ 12 Person Jury

Demand: $_____        Other: __injunctive relief_____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____    Judge: _____    Calendar #:_____

Case No.:_____    Judge: _____    Calendar#:_____

---

NATURE OF SUIT:        *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract         ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty         ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument      ☐ 27 Insurance/Subrogation               ☐ 26 Insurance/Subrogation
☐ 07 Personal Property               Over $25,000 Pltf. Grants Consent        Over $25,000 Consent Denied
☐ 13 Employment Discrimination  ☐ 07 Insurance/Subrogation               ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent       Under $25,000 Consent Denied
                                ☐ 28 Motion to Confirm Arbitration
                                     Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile              ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion              ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process          ☐ 10 Invasion of Privacy        ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection   ☐ 11 Libel and Slander               Not Malpractice)
☐ 03 Assault and Battery       ☐ 12 Malicious Interference     ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution    ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal        ☐ 20 Friendly Suit
☐ 06 False Accusation          ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest              ☐ 16 Negligence- (Not Automobile,  ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                          Not Malpractice)              ☐ 23 Tobacco
                                                                  ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

s/ Wendy Weinberg

Attorney's Signature

June  5, 2020

Date



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

DISTRICT OF COLUMBIA
    Vs.                                                C.A. No.     2020 CA 002697 B
ELEVATE CREDIT, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:  June 5, 2020
Initial Conference: 10:00 am, Friday, September 11, 2020
Location:   Courtroom 201
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

CAIO-60